CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAR 14 2013

JULIA C. DUDLEY, CLERK
BY: HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 4:05-cr-00008-7 |
| | ) | Case No. 4:06-cr-00001-1 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| CESAR HUERTA CANTU, | ) | By:   Hon. Jackson L. Kiser |
| Petitioner. | ) | Senior United States District Judge |

Cesar Huerta Cantu, a federal inmate proceeding with counsel, filed a pro se motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. The United States filed a motion to dismiss, and petitioner responded, making the matter ripe for disposition. After reviewing the record, I grant the United States' motion to dismiss and dismiss the § 2255 motion as untimely filed.

**I.**

After petitioner pleaded guilty to one count of money laundering, in violation of 18 U.S.C. § 1956(h), and one count of conspiring to possess 1,000 kilograms or more of marijuana and 5 kilograms or more of cocaine with intent to distribute, in violation of 21 U.S.C. § 846, I ordered the probation office of this court to prepare a presentence investigation report ("PSR"). The PSR was subsequently forwarded to the United States and to petitioner's counsel, who did not note any objections. The PSR attributed 3,000 to 10,000 kilograms of marijuana to petitioner's criminal activity.

At the onset of the sentencing hearing on May 11, 2006, I asked counsel if he had any last minute corrections or additions, and counsel replied that he did not. Hearing no objections from counsel or the United States, I adopted the PSR as it was written. Unfortunately, the PSR contained a critical typo. Paragraph 56 correctly described the Base Offense Level as 34, pursuant to United States Sentencing Guideline ("USSG") § 2D1.1(c) and § 2S1.1(a)(1), but the

number typed in the calculations column read 36. After calculating various adjustments, the PSR recommended an erroneous Total Offense Level of 37 instead of 35. The erroneous Total Offense Level, when combined with petitioner's Criminal History Category of I, resulted in an erroneous guideline sentencing range of 210 to 262 months. After hearing petitioner's testimony and argument by the parties, I addressed petitioner:

> [Y]our lack of a criminal record, of course, is a big plus in your favor. And certainly, your family has stood behind you four square. You couldn't ask for any more support than they've given you. And it's unfortunate, Mr. Cantu, that a family has to suffer for the misdeeds of one of its members. . . . As I say, you did not have a criminal record, but when you fell, you certainly fell big. And the quantity of drugs involved are just amazing to say the least. I can't in good conscious say that there's any factor in your case that would permit a . . . variance from the guidelines . . ., and the statutory requirements are that the court consider the policies behind the guidelines. And I think that all of the factors are well addressed in the [PSR]. I'll do as much for you as I can, that is to sentence you at the very bottom of the guidelines.

(Sentencing Tr. 19.) I then sentenced petitioner to a 210 month term of incarceration, the lowest sentence in the erroneous guideline range. However, petitioner's correct sentencing guideline range was 168 to 210 months.[1] I entered petitioner's criminal judgment on May 22, 2006, and petitioner did not appeal.[2]

The court received petitioner's unsigned, self-styled § 2255 motion on July 6, 2012, alleging that he discovered the error on May 17, 2012, when he received his family's copy of the PSR. The court conditionally filed the unsigned motion, advised him of the deficiency, requested a signed motion, and sent him a form § 2255 motion. Petitioner executed and filed the

---

[1] Petitioner faced a statutory sentencing range of 10 years' to life incarceration, pursuant to 21 U.S.C. § 841(b)(1)(A), regardless of the guideline calculation error.
[2] On January 16, 2009, I granted the United States' motion to reduce the sentence due to substantial assistance, pursuant to Fed. R. Crim. P. 35(b)(2), and entered an Amended Judgment on January 23, 2009. The Amended Judgment sentenced petitioner to, inter alia, 180 months' incarceration. This amended judgment does not affect calculations of the limitations period under 28 U.S.C. § 2255(f). See 18 U.S.C. § 3582(b) (stating an original criminal judgment is the "final judgment" notwithstanding an amended judgment for a sentence reduction pursuant to Fed. R. Crim. P. 35); United States v. Sanders, 247 F.3d 139, 143-44 (4th Cir. 2001) (recognizing a Fed. R. Crim. P. 35(b) resentencing did not affect the date of finality for the original criminal judgment for purposes of 28 U.S.C. § 2255(f)(1)).

form motion, arguing that counsel rendered ineffective assistance by not noticing and correcting the error. Petitioner explains that counsel did not review the PSR "at length" with petitioner before the sentencing hearing, and he argues that his extraordinary rehabilitation in prison warrants a downward departure if he is resentenced.

## II.

Courts and the public can presume that a defendant stands fairly and finally convicted after conviction and exhaustion, or waiver, of any right to appeal. United States v. Frady, 456 U.S. 152, 164 (1982). Nonetheless, federal convicts in custody may attack the validity of their federal sentences by filing motions to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255, within the one-year statute of limitations. This limitations period begins to run from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

Petitioner's criminal judgment became final on June 5, 2006, when the time to appeal the original criminal judgment expired. See Fed. R. App. P. 4(b)(1)(A)(i) (2006) (permitting an appeal to be filed within 10 days of judgment); Fed. R. App. P. 26(a)(2) (2006) (excluding intermediate Saturdays, Sundays, and legal holidays from time calculations of less than eleven days); United States v. Clay, 537 U.S. 522, 524 (2003) (stating a conviction becomes final once

the availability of direct review is exhausted). Accordingly, for purposes of § 2255(f)(1), petitioner had until June 5, 2007, to timely file a § 2255 motion, but he did not file the motion until May 17, 2012, at the earliest.[3]

Petitioner argues that his § 2255 motion should be considered timely filed under § 2255(f)(4) because he filed it within one year of when he noticed the error. Petitioner asked his family to mail him his PSR because he learned that fellow prisoners were able to obtain their PSRs through the prison-mail system, despite a prison rule that prohibits inmates from possessing PSRs. Petitioner alleges that he quickly filed the self-styled § 2255 motion once he received the PSR on May 17, 2012, and saw the error.

Section 2255(f)(4) permits the limitations period to begin on the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. See Anjulo-Lopez v. United States, 541 F.3d 814, 818 (8th Cir. 2008) (recognizing due diligence requires at least that a prisoner make reasonable efforts to discover the facts supporting the claim). I find that petitioner did not exercise due diligence by waiting until 2012 to try to review the PSR drafted in 2006.

Petitioner could have asked to see the PSR as early as the day of the sentencing hearing, which if he had exercised due diligence, was as simple as asking counsel to show him the PSR.[4]

---

[3] Petitioner's amended motion clearly relates back to the timing of the self-styled motion because it asserts claims that were attempted to be set out in the original pleading. See Fed. R. Civ. P. 15(c)(1)(B) (permitting an amendment to relate back if, inter alia, the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading). However, there is nothing in the record to establish when petitioner handed the self-styled motion to prison officials for mailing to benefit from the prison-mailbox rule. See Rule 3(d), Rules Governing § 2255 Proceedings (discussing the prison-mailbox rule). Based on petitioner's allegations, however, I assume for purposes of this Opinion that petitioner filed the motion no earlier than May 17, 2012, which is the date he alleges he received his family's copy of the PSR and noticed the error.

[4] The statement in the amended motion, "My attorney never spent the time to go over my PS[]R with me at length that would have been necessary to find the error . . .," does not clearly state whether counsel cursorily reviewed the PSR with petitioner or not at all. Accordingly, I resolve the ambiguity in petitioner's favor with the conclusion counsel did not review the PSR with petitioner.

Petitioner does not explain why he would not have been able to see the PSR before the sentencing hearing. Even if petitioner could not get the PSR from counsel, he could have still seen the PSR in prison long before 2012. Petitioner is correct that Bureau of Prisons ("BOP") policy prohibits inmates from possessing their PSRs.[5] See BOP Program Statement 1351.05 ("Release of Information") at 15 (noting a PSR obtained through prison mail is contraband), available at www.bop.gov/policy/progstat/1351_005.pdf (last accessed Mar. 12, 2013). See also In Re Katrina Canal Breaches Consol. Litig., 533 F. Supp. 2d 615, 631-33 & nn.14-15 (E.D. La. 2008) (collecting cases indicating that federal courts may take judicial notice of governmental websites, including court records); Williams v. Long, 585 F. Supp. 2d 679, 686-88 & n.4 (D. Md. 2008) (collecting cases indicating that postings on government websites are inherently authentic or self-authenticating). However, the BOP has allowed inmates to review their PSRs in BOP facilities since 2002. Release of Information at 15. The Release of Information policy explicitly states:

> Although prohibited from obtaining or possessing photocopies, federal inmates are entitled . . . to access their own PSRs. . . . Inmates must be provided reasonable opportunities to access and review their PSRs. . . . Inmates are responsible for requesting an opportunity to access and review these records with unit staff in accordance with the [applicable policy].

Id. at 16. A PSR prepared on or after December 1, 1975, is placed in the disclosable portion of the Inmate Central File. Id. "An inmate may at any time request to review all disclosable portions of his or her Inmate Central File by submitting a request to a staff member designated by the Warden." 28 C.F.R. § 513.40(a). Thus, petitioner could still have discovered the error in the PSR once he arrived at a BOP facility by reviewing his central file, and petitioner does not explain any investigation he undertook to read his PSR despite the BOP's pre-existing policy.

---

[5] The policy does not apply to inmates in BOP facilities that have a need to review the PSR before sentencing. Id. It is not clear from the record whether petitioner was a housed at a BOP facility before sentencing.

Petitioner fails to establish why he could not have exercised due diligence or could have discovered the error prior to May 17, 2011, to make the instant motion timely filed. It is clear that petitioner could have exercised due diligence more than a year before May 17, 2011, by seeing his PSR before being sentenced in 2006 or during his incarceration at a BOP facility. Petitioner wholly fails to explain why he never asked a family member to review the PSR for such a typographical error or why he waited years before attempting to obtain a copy of the PSR from his family. Furthermore, petitioner did not need a copy of the PSR to discover the calculation error as he could have discovered the error by comparing the USSG against the erroneous sentencing calculations reflected in the record. Consequently, petitioner fails to fulfill his burden that he filed the instant motion within the one-year limitations period under § 2255(f)(4).[6] See Ramos-Martinez v. United States, 638 F.3d 315, 325 (1st Cir. 2011) ("A habeas petitioner has the burden of adducing facts sufficient to show both that his petition should be treated as timely and that he is entitled to relief."). See also Johnson v. United States, 544 U.S. 295, 311 (2005) (refusing to apply § 2255(f)(4) where "there is every reason to believe that prompt action would have produced [the facts on which the claim for relief is based] well over a year before [the petitioner] filed his § 2255 petition.").

Equitable tolling is available only in "those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (internal quotation marks omitted) (citing Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)). Thus, a petitioner must have "been pursuing his rights diligently, and . . .

---

[6] Petitioner does not argue timeliness under § 2255(f)(2) or (f)(3).

some extraordinary circumstance stood in his way" to prevent timely filing. Holland v. Florida, ___ U.S. ___, 130 S. Ct. 2549, 2560 (2010).

As already discussed, petitioner fails to establish that he diligently pursued his rights, and I do not find any extraordinary circumstance in the record that prevented petitioner from filing a timely § 2255 motion. See, e.g., United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) (noting pro se status and ignorance of the law does not justify equitable tolling); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999) (noting unfamiliarity with the law due to illiteracy or pro se status does not toll limitations period). While I am sympathetic to petitioner's position, I am not permitted to disregard the law, and petitioner did not satisfy his burden that he filed his § 2255 motion within the one-year statute of limitations, petitioner is not entitled to equitable tolling, and the petition must be dismissed.

### III.

For the foregoing reasons, I grant the United States' motion to dismiss and dismiss petitioner's 28 U.S.C. § 2255 motion as untimely filed. Based upon my finding that petitioner has not made the requisite substantial showing of denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability is denied.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to the parties.

ENTER: This 14th day of March, 2013.

Senior United States District Judge